In the Matter of the Estate of ELEANOR H. GOYETTE, Deceased.

Surrogate's Court, Otsego County, May 23, 1949.

*Julian B. Jackson* for Edwin W. Goyette, petitioner.

*Warren G. Farrington,* special guardian for Patricia A. Goyette, an infant, respondent.

LATHAM, S. This is an application by the husband of decedent for letters of administration upon her estate. It appears by the petition that decedent and petitioner were not living together at the time of her death and that on September 7, 1948, a decree *nisi* was granted in Washington County, Vermont, in favor of the petitioner and against the decedent, which decree of divorce dissolved the marriage between the parties but did not become final until March 7, 1949. The decedent died a resident of Otsego County, New York, on October 15, 1948.

It is provided by section 3215 of the Vermont Statutes, revision of 1947, that a decree of divorce from the bonds of matrimony in the first instance, shall be a decree *nisi* and shall become absolute at the expiration of six months from the entry thereof unless the court shall otherwise direct.

The court, in view of the allegations of the petition, ordered that notice be given to the infant daughter and sole distributee of the decedent and appointed a special guardian to represent the infant respondent and the special guardian interposed an answer to the petition wherein he alleged that under the provisions of a separation agreement dated on or about August 5, 1946, between the decedent and the petitioner each party waived the right to share in the estate of the other in event of intestacy and to act as executor or administrator thereof.

It appears from the evidence that on the date of the execution of the alleged agreement the parties were residents of Otsego County, New York. At that time, they were each represented by attorneys and a voluminous separation agreement was prepared and submitted to the husband. The husband made numerous corrections and interlineations in the original draft and the final draft was finally prepared and executed by the parties under seal and acknowledged before a notary public. The agreement very completely settled the rights of the parties, provided for the retention of wedding gifts by the wife granted to the husband certain other furniture, gave to each of the parties very broad powers to dispose of their property during their lifetime and

after death without interference on the part of the other, provided for the custody of the child of the marriage and provided that the wife maintain herself in consideration of the making by the husband of substantial monthly payments throughout her lifetime or until her remarriage and also the making of the wife a beneficiary under certain policies of insurance carried on the life of the husband.

The wife then accepted the provisions in full settlement of all claims against the husband including among other things, all rights under laws of testacy and intestacy and in very complete language provided complete freedom of the husband's estate from any claims of the wife other than as set forth in the agreement.

It was then provided that the agreement should not be a bar to any action for separation or divorce in the State of New York or elsewhere and each of the parties to the agreement released and relinquished all claims and rights to share in any capacity or to any extent in the estate of the other on the death of the other whether testate or intestate or to act as administrator of the other's estate.

It was then provided that no modification or waiver of the terms of the agreement should be valid unless in writing and executed with the same formality as the agreement and it was further provided that all matters affecting interpretation of the agreement should be governed by the laws of the State of New York.

It further appears that after the commencement of the divorce action in Vermont, a stipulation was entered into which is signed in the name of each of the parties by his respective attorney and is not under seal. It is provided among other things in the stipulation as follows: " In the above entitled cause, it is hereby stipulated by and between the parties, by their respective attorneys, that if a decree of divorce is granted to the libellant, all claims of the parties, each against the other, with respect to their property, or the property of either, and with respect to the duties and obligations of either to the other, are and shall be settled in accordance with the following provisions: ".

It then provides for payment by the husband who instituted the divorce action to the wife of a lump sum settlement equal to a total of four years' payments under the original agreement of separation, a payment of certain attorney's fees, the making of the wife and daughter beneficiaries of certain insurance policies, the custody of the child of the parties and further provides as follows: " That full performance of the terms of this stipulation

by the libellant shall be in full settlement and satisfaction of any other claim by the libellee against the libellant for alimony or otherwise and such full performance shall be a termination of the agreement between said parties dated August 5, 1946 and the same to be of no effect after the date of said full performance of this stipulation.''

It appears that the petitioner has complied with the terms of said agreement insofar as it is possible for them to be complied with, the only default being in the designation of beneficiary under certain life insurance policies which were incorrectly named in the stipulation.

The facts at hand give rise to several questions of law, the first being whether execution of the stipulation by the attorneys for the respective parties without proof of any authority from the parties is sufficient to modify the terms of the separation agreement. It is obvious that the stipulation in the Vermont divorce action did not involve mere procedural matters in the course of the conduct of the litigation but that it affected substantial rights of the parties and, insofar as it changed the method of payment of alimony from a lifetime income to a rather modest lump sum and purported to discharge all other obligations and satisfy all other rights of the parties under the very complete separation agreement, it affected substantial rights of the parties. It was held in *Hallow* v. *Hallow* (200 App. Div. 642) that an attorney has no implied authority to waive a party's rights by the reduction of alimony given to her by order of the court and that there is no presumption that a stipulation waiving such right to alimony was authorized by the plaintiff. Since the Legislature has given to husband and wife the right to settle their differences by agreement as well as by litigation (Domestic Relations Law, § 51), I see no difference between modification of a formally executed separation agreement and modification of an order for payment of alimony by stipulation.

It further appears to be the law that even though counsel had authority to enter into a stipulation that where a stipulation was made upon the erroneous belief that the divorce would become final while the parties were still alive that the wife should be relieved of that stipulation in view of her untimely and unforseeable death. Similar reasoning was followed in relation to an erroneous stipulation as to the law of a foreign State which was later reversed by a higher court of that State. (*Keeler* v. *Templeton,* 165 Misc. 392.)

The second legal question which is presented is whether the stipulation which attempts to modify the separation agreement

between the husband and wife violates the provisions of section 51 of the Domestic Relations Law which provides that a husband and wife cannot contract to alter or dissolve the marriage.

It is difficult for me to spell out of the stipulation and order in the Vermont action any conclusion but that the husband was buying his way out of the marriage. The agreement was entirely conditioned upon the Vermont court's granting a divorce and the payments thereunder were made simultaneously with the granting of the interlocutory decree.

Regardless of the legal faults contained in the stipulation relied upon by the petitioner, I find it impossible to believe that at the time that the stipulation was entered into that the parties contemplated any modification of the original agreement of separation, which would place the petitioner who had once voluntarily and by a valid agreement surrendered all of his rights to take as surviving spouse of the deceased in position to inherit upon the death of his wife the very money which he had paid to relieve himself of further liability for her support and bring an end to the matrimonial status.

I, therefore, find as a fact that the parties to the stipulation in the Vermont action did not contemplate a modification of the thirteenth paragraph of the separation agreement of August 5, 1946, and that it was not their intention so to do.

The application for letters of administration is therefore denied and the special guardian is directed to take such steps as may be necessary to secure appointment of a proper administrator of the estate of decedent in order to protect the interests of his infant ward.

Submit decree accordingly.